UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

JUDY ROYAL,                              )
                                         )
       Plaintiff,                       )
                                         )
v.                                       )     No. 11-2214-STA-dkv
                                         )
SELECT PORTFOLIO SERVICING, INC.         )
f/k/a FAIRBANKS CAPITAL CORP.,           )
                                         )
       Defendant.                       )
_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**
_____

      Before the Court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (D.E. # 16), filed on July 12, 2011. Plaintiff filed a Response to Defendant's Motion (D.E. # 20) on August 19, 2011. For the reasons set forth below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

      Plaintiff filed her Complaint in Shelby County Chancery Court on February 22, 2011. (D.E. # 1-1.) Defendant removed the case to this Court on March 24, 2011. (D.E. # 1.) Defendant initially filed a Motion to Dismiss on March 31, 2011 (D.E. # 3), but after Plaintiff was given leave to file an Amended Complaint, the Court found that Motion to Dismiss to be moot. (D.E. # 14.) Plaintiff then filed her Amended Complaint on June 28, 2011 (D.E. # 15), and Defendant filed the Motion to Dismiss currently before the Court on July 12, 2011 (D.E. # 16.)

1

In her Amended Complaint, Plaintiff states that she is a sixty-five year old African-American woman residing in Memphis, Tennessee, and she suffers from "various health issues." (*Id.* ¶ 3, 5.) "Days after executing her refinancing loan with JP Morgan Chase Bank NA" ("Chase") on March 24, 2008, Plaintiff suffered a series of strokes which left her with an unsound mind. (*Id.* ¶ 35.) Plaintiff did not regain her ability to care for herself until November of 2010, when she sought legal counsel. (*Id.* ¶ 38.)

On March 24, 1995, she refinanced the mortgage on her residence by executing a Note and Deed of Trust (the "Deed of Trust") with EquiCredit Capital Corp. (*Id.* ¶ 6.) In 2002, Fairbanks Capital Corp. began servicing the mortgage loan which secured Plaintiff's residence, and in 2004, Fairbanks Capital Corp. changed its name to Select Portfolio Servicing System.[1] (*Id.* ¶ 7-8.) Defendant serviced the loan until Plaintiff refinanced the loan on March 24, 2008 through a refinancing agreement ("the Refinancing"). (*Id.* ¶ 9.)

While it serviced Plaintiff's loan, Defendant was required to adhere to the terms of the Deed of Trust. (*Id.* ¶ 10.) Paragraph 3 of the Deed of Trust provides the following: "[u]nless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note." (*Id.* ¶ 11; D.E. # 15-1 at 2.) Plaintiff interprets this section to mean that "as long as payments are made on the mortgage loan, money should be set aside to pay property taxes because [Defendant] has an obligation to pay property taxes before disbursing funds to the lender." (Am. Compl. ¶ 12.) Plaintiff asserts that Defendant breached the Deed of

---

[1] Select Portfolio is named as the defendant in this case.

2

Trust's terms from 2005 until March 24, 2008 "by not applying monthly mortgage payments to property taxes." (*Id.* ¶ 13.)

Plaintiff also alleges that Defendant breached the Deed of Trust at two additional times: during her bankruptcy and by misapplying Plaintiff's monthly escrow payments. Regarding her bankruptcy, Plaintiff indicates that Defendant presented a claim totaling $6,301.11 during her bankruptcy case in 2005. (*Id.* ¶ 15.) However, on October 17, 2005, the bankruptcy trustee distributed the last of $12,491.40 to Defendant, which created a $6,190.29 overpayment. (*Id.* ¶ 14, 16.) According to Plaintiff, Defendant did not apply this overpayment to property taxes as required by the Deed of Trust. (*Id.* ¶ 17.) As damages arising from this inaction, Plaintiff states that she had to pay Defendant its alleged property tax advances as well as pay the Trustees of the City of Memphis and Shelby County for unpaid property taxes. (*Id.* ¶ 18.)

Regarding the misapplication of monthly escrow payments, Plaintiff asserts that she paid hazard insurance out of her own pocket from 2005 until March 24, 2008. (*Id.* ¶ 19.) The property taxes on Plaintiff's residence total $2,162 annually—$1,200.00 payable to the Shelby County Trustee and $962.00 payable to the City of Memphis Trustee. (*Id.* ¶ 20.) Plaintiff's monthly mortgage payments included an escrow payment, which averaged $419.43 per month from December 2005 until March 24, 2008. (*Id.* ¶ 21-22.) According to Plaintiff, she paid $5,033.16 annually towards property taxes. (*Id.* ¶ 22.) Although Plaintiff paid partial payments at times, she paid larger amounts at other times to catch up her payments. (*Id.* ¶ 23.) Those larger payments included assessed late fees and other amounts owed. (*Id.*) Plaintiff's mortgage payments were current at the Refinancing. (*Id.* ¶ 24.)

3

Plaintiff paid $11,324.00 to Defendant for property taxes from December 2005 until March 24, 2008 through her mortgage payments.[2] (*Id.* ¶ 25.) Plaintiff paid Defendant $56,788.71 to be used for property taxes from October of 2005 until March of 2008, but the property taxes averaged only $2,160.00 per year.[3] (*Id.* ¶ 32.) Plaintiff alleges that Defendant breached the Deed of Trust by failing to apply the funds she put into escrow toward her property taxes. (*Id.* ¶ 26.) This breach arose because Defendant did not timely pay Plaintiff's property taxes. (*Id.* ¶ 27.) Plaintiff alleges that Defendant waited until it received notice of unpaid property taxes before it paid the property taxes, thereby "allowing local officials to assess penalties and interest on the property tax assessment" totaling $562.72. (*Id.*) Additionally, Defendant "allegedly paid the property taxes from its own corporate coffers" even though an escrow account could have been used to pay property taxes. (*Id.* ¶ 28.) After Defendant paid the property taxes with its own funds, it would notify Plaintiff of its corporate advance of funds and assess penalties and fees for the corporate advancement. (*Id.*)

Plaintiff also alleges that fraud took place during the Refinancing. She submits that Defendant presented her new lender, Chase, with a fraudulent or erroneous pay-off statement requesting $100,724.26 as payment. (*Id.* ¶ 29.) This amount included $32,973.31 which was paid directly to Defendant for "alleged corporate advances for property taxes, servicing fees, and interest on the alleged corporate advances." (*Id.*) Plaintiff avers that Defendant knew or should have known that it was not entitled to $32,973.31 and that "it presented the pay-off statement to

---

[2] The Court notes that this amount differs from Plaintiff's alleged payment to Defendant of $5,033.66 in property taxes in Paragraph 22 of the Amended Complaint.

[3] Again, this amount differs from the amount of property taxes in Paragraphs 22 and 25.

make money." (*Id.* ¶ 30.) Defendant received all funds requested in this pay-off statement. (*Id.* ¶ 31.) The principal listed on Defendant's refinancing pay-off statement was $116,725.00 instead of $83,751.67. (*Id.* ¶ 33.) As part of her new refinancing loan, Plaintiff will pay $41,082.00 more in interest due to the allegedly fraudulent or erroneous pay-off statement. (*Id.* ¶ 34.)

## STANDARD OF REVIEW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled factual allegations of the complaint as true, construe those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the plaintiff.[4] However, legal conclusions "masquerading as factual allegations" or unwarranted factual inferences including "conclusory allegations" need not be accepted as true.[5] To avoid dismissal under Rule 12(b)(6), "the complaint must contain either direct or inferential allegations" with respect to all material elements of the claim.[6]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[7] Although this standard does not require "detailed factual allegations," it does require more than "labels and

---

[4] *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2007).

[5] *Id.*

[6] *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

[7] Fed. R. Civ. P. 8(a)(2).

conclusions" or "a formulaic recitation of the elements of a cause of action."[8] To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

## ANALYSIS

Defendant asserts that Plaintiff's Amended Complaint contains nine claims for relief, four unnumbered and five numbered.[11] Defendant appears to include the subheadings in the factual section of Plaintiff's Amended Complaint as the four unnumbered claims for relief. However, in her response, Plaintiff implies that she has alleged only five claims for relief.[12] Accordingly, the Court will confine its analysis to the five alleged numbered claims for relief challenged by Defendant.

Additionally, Defendant asserts that Plaintiff is estopped from challenging the amount presented in the pay-off statement due to her ratification of Defendant's alleged actions.[13] Defendant equates the HUD-1 statement signed by Plaintiff, which contained the amount owed

---

[8] *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

[9] *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

[10] *Iqbal,* 129 S. Ct. at 1949.

[11] (Def.'s Mot. to Dismiss, D.E. # 17, at 4.)

[12] (Pl.'s Resp., D.E. # 20-1, at 3.)

[13] (Def.'s Mot. to Dismiss, D.E. # 17, at 5.)

to Defendant under its loan, to a contract, which would require her to adhere to its terms.[14] Defendant also states that because she signed the refinancing agreement with Chase authorizing the pay-off of Defendant, Plaintiff is now prevented from bringing this action. Defendant avers that if Plaintiff disagreed with the amount listed in the pay-off statement, she needed to raise her objections at closing rather than pay the disputed amount in full and then challenge it.[15]

In response, Plaintiff argues that the HUD-1 statement does not act as a waiver and that it is merely a disclosure required by the Real Estate Settlement Procedures Act.[16] In addition to asserting that the HUD-1 statement is not a contract at all, Plaintiff argues that the HUD-1 requires the borrower to sign it in acknowledgment that he or she received a copy of the statement similar to a receipt of the transaction.[17]

The Court is unpersuaded by Defendant's argument. First, a motion to dismiss under Rule 12(b)(6) tests the sufficiency of a case's pleadings and does not take into account facts or documentation not accompanying the pleadings. Therefore, Defendant's reliance on the HUD-1 statement at this stage of litigation is improper. Second, even if the Federal Rules of Civil Procedure permitted the Court to consider the HUD-1 statement, the Court could not do so. The HUD-1 statement is not contained in the body of Plaintiff's Amended Complaint, nor is it attached as an exhibit to the Amended Complaint. Furthermore, Defendant did not attach the HUD-1 statement as an exhibit to its Motion to Dismiss. Thus, it has not been properly

---

[14] (*Id.* at 6.)

[15] (*Id.*)

[16] (Pl.'s Resp., D.E. # 20-1, at 6.)

[17] (*Id.* at 7.)

presented to the Court. As the Court finds that any consideration of the HUD-1 statement would be inappropriate and not provided for under Rule 12(b)(6), it will now proceed to the merits of Defendant's Motion.

## TCPA

Because Plaintiff's Count 1 and Count 2 both arise under the Tennessee Consumer Protection Act ("TCPA"), and the same statute of limitations applies to both Counts, the Court will address Count 1 and 2 simultaneously.

The statute of limitations for actions under the TCPA is "one year from a person's discovery of the unlawful act or practice."[18] However, Tennessee law tolls this statute of limitations in the face of incapacity.[19] The relevant statute provides that "[i]f the person entitled to commence an action is, *at the time the cause of action accrued*, . . . of unsound mind, such person . . . may commence the action after the removal of such disability within the time of limitation for the particular cause of action."[20] The Tennessee Court of Appeals has stated that although Section 28-1-106 provides great potential relief, it should not be given an expansive interpretation beyond its plain meaning.[21] Thus, the statute of limitations is tolled for incapacity or disability only if the incapacity or disability exists when the cause of action is accrued.[22]

---

[18] Tenn. Code Ann. § 47-18-110.

[19] *Sherrill v. Souder*, 325 S.W.3d 584, 599-600 (Tenn. 2010).

[20] Tenn. Code Ann. § 28-1-106 (emphasis added).

[21] *See Doe v. Coffee Cnty. Bd. of Educ.*, 852 S.W.2d 899, 905 (Tenn. Ct. App. 1992).

[22] *See* Tenn. Code Ann. § 28-1-106.

Defendant argues that "Tennessee law does not allow for a statute of limitations to be tolled for a disability that occurs after the accrual of the cause of action."[23] Because Plaintiff received Defendant's statements showing the amount due each month, Defendant submits that she was aware or should have been aware of any allegedly unfair or deceptive acts by the Refinancing on March 24, 2008.[24] Additionally, Defendant argues that the TCPA does not apply to its conduct during the Refinancing.

In response, Plaintiff avers that "the last and most significant injury occurred when she paid [Defendant] $100,724.26 on March 24, 2008, when she closed on her new mortgage with Chase" and that her TCPA claims were timely.[25] Plaintiff also avers that the TCPA applies to Defendant's conduct during the Refinancing. Plaintiff does not address Section 28-1-106's language regarding the tolling of the statute of limitations only if incapacity exists when the plaintiff accrues a cause of action.

Here, the possibility of activity in violation of the TCPA ended with the Refinancing on March 24, 2008. Plaintiff filed her original Complaint in Shelby County Chancery Court on February 22, 2011. Therefore, for her suit to be timely, the statute of limitations would have had to be tolled until at least February 23, 2010.

The Court finds that Plaintiff's TCPA claims would be untimely if the TCPA applied to the facts presented in her Amended Complaint. If the TCPA did not apply to Defendant's conduct, Plaintiff's Amended Complaint would necessarily fail to state a claim for relief under

---

[23] (Def.'s Mot. to Dismiss, D.E. # 17, at 11.)

[24] (*Id.* at 13.)

[25] (Pl.'s Resp., D.E. 20-1, at 10.)

9

the TCPA, and dismissal of Plaintiff's TCPA claims would be required. Thus, the Court will proceed under the assumption that the TCPA applies.

In her Amended Complaint, Plaintiff avers that she suffered several strokes days after the Refinancing. Even assuming that the strokes incapacitated her and caused her to be of unsound mind as required by Section 28-1-106, her incapacity occurred after she accrued her cause of action. Therefore, the statute of limitations was not tolled. Because Plaintiff sued almost three years after she accrued a cause of action under the TCPA, Plaintiff's TCPA claims are barred by the one-year statute of limitations. Thus, Defendant's Motion to Dismiss Counts 1 and 2 of the Amended Complaint is **GRANTED**.

Conversion

Conversion is "the appropriation of [a] thing to the party's own use and benefit, by the exercise of dominion over it, in defiance of [the] plaintiff's right."[26] Conversion is an intentional tort containing three elements: "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights."[27] Conversion carries a three-year statute of limitations.[28]

In her Amended Complaint, Plaintiff avers that Defendant "knowingly presented an unfair and deceptive pay-off statement [showing] that she owed nearly $35,000 more than the

---

[26] *Paehler v. Union Planters Nat'l Bank*, 971 S.W.2d 393, 398 (Tenn. Ct. App. 1997).

[27] *Greenbank v. Thompson*, No. E2010-00160-COA-R3-CV, 2010 WL 5549231, at *3 (Tenn. Ct. App. Dec. 29, 2010).

[28] Tenn. Code Ann. § 28-3-105.

princip[al] amount of the loan."[29] Plaintiff paid this allegedly erroneous pay-off amount through the proceeds of the mortgage loan between her and Chase.[30] According to Plaintiff, "[Defendant]'s conversion of [her] loan proceeds caused her to execute a refinance mortgage [requiring her] to pay $41,082.00 more in interest payments" than she would without the conversion."[31] Additionally, Plaintiff alleges that Defendant converted her hazard mortgage payments for "its own use, against [Plaintiff's] will," thereby "depriving her from [sic] her money."[32]

Defendant argues that Plaintiff's conversion claim is barred by the statute of limitations.[33] Furthermore, Defendant states that Plaintiff's conversion claim is internally inconsistent as she alleges that Defendant converted both the allegedly excessive pay-off amounts and her hazard mortgage payments.[34] According to Defendant, these internal inconsistencies cause Plaintiff to fail to state a claim upon which relief may be granted, as they make it "unclear as to what [she] is alleging."[35]

---

[29] (Am. Compl. ¶ 47.)

[30] (*Id.* ¶ 48.)

[31] (*Id.* ¶ 49.)

[32] (*Id.* ¶ 50.)

[33] (Def.'s Mot. to Dismiss, D.E. # 17, at 17.)

[34] (*Id.* at 18.)

[35] (*Id.*)

11

In response, Plaintiff avers that the statute of limitations did not run on her conversion claim.[36] Furthermore, she states that even with the "nonsense 'hazard mortgage payments' phrase,"[37] she pled that Defendant converted $35,000.00 through its fraudulent pay-off statement, which is enough to state a claim of conversion.[38] Plaintiff also asserts that she did not waive her right to seek damages for conversion by signing the refinancing agreement with Chase.[39]

The Court finds that the statute of limitations did not run on Plaintiff's conversion claim. She filed suit on February 22, 2011, and the alleged conversion occurred at the Refinancing on March 24, 2008. Therefore, Plaintiff sued less than three years after she accrued her cause of action for conversion, and the Court must proceed to the merits of Defendant's motion to dismiss her conversion claim.

The Court finds that the facts alleged by Plaintiff do not support a claim for conversion. While Plaintiff conclusorily alleges that Defendant presented "an unfair and deceptive pay-off statement," and that she paid the amount in the statement, Plaintiff then alleges that "[Defendant's] conversion . . . caused her to execute . . . a refinance mortgage" requiring $41,082.00 more in interest payments than would her old mortgage.[40] While Plaintiff appears to assert that the "hazard mortgage payments" were the items which Defendant allegedly converted

---

[36] (Pl.'s Resp., D.E. # 20-1, at 14.)

[37] The Court notes that the phrase "hazard mortgage payments" appears in Plaintiff's Amended Complaint and thus forms part of her conversion claim.

[38] (*Id.* at 13.)

[39] (*Id.* at 14.)

[40] (Am. Compl. ¶ 47-49.)

"for its own use" in the last paragraph of Count 3,[41] the Court can find no facts in the Amended Complaint identifying how Defendant allegedly used or benefitted from these converted funds. Moreover, the use element is the only element of conversion Plaintiff asserts with respect to the hazard mortgage payments, and even then, she asserts it in conclusory fashion. As to the allegedly deceptive pay-off statement, Plaintiff fails to allege the use or benefit element of conversion. Thus, Plaintiff failed to plead all of the elements of conversion.

Even if Plaintiff had properly plead all of the elements of conversion, her formulaic recitation of those elements with their inadequate factual support could not survive the plausibility standard articulated in *Twombly* and *Iqbal*. Therefore, Defendant's Motion to Dismiss Count 3 of the Amended Complaint is **GRANTED**.

## Fraud

The elements of fraud under Tennessee law are as follows: "(1) an intentional misrepresentation of an existing material fact, (2) knowledge of the representation's falsity, and (3) injury caused by reasonable reliance on the misrepresentation."[42] Moreover, Federal Rule of Procedure 9(b) ("Rule 9(b)") requires "a party [to] state with particularity the circumstances constituting fraud."[43] Intent and knowledge can be alleged generally under Rule 9(b).[44] Rule 9(b) alerts "defendants 'as to the particulars of their alleged misconduct' so that they may

---

[41] (*Id.* ¶ 50.)

[42] *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005).

[43] Fed. R. Civ. P. 9(b).

[44] *Id.*

13

respond."[45] This heightened pleading standard prevents fishing expeditions, protects defendants' reputations from allegations of fraud, and narrows potentially wide-ranging discovery to relevant matters.[46] As the Sixth Circuit has noted, "[t]o plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3), the defendant's fraudulent intent, and (4) the resulting injury."[47]

In her Amended Complaint, Plaintiff avers that at the Refinancing, Defendant "knowingly presented an inaccurate and inflated pay-off statement" indicating that she owed $100,724.26.[48] Plaintiff next states that she reasonably relief on the pay-off statement and paid the full amount in the statement at her mortgage closing with Chase.[49] These alleged acts of fraud caused Plaintiff to execute a refinance mortgage requiring her to pay $41,082.00 more in interest than if Defendant had not acted fraudulently.[50]

Defendant argues that Plaintiff misconstrues the contents of the pay-off statement; according to Defendant, the pay-off statement amount contained fees and interest as well as the

---

[45] *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *U.S.* ex rel. *Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 (6th Cir. 2007)).

[46] *U.S.* ex rel. *SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008); *Bledsoe*, 501 F.3d at 503 n.11.

[47] *Chesbrough*, 655 F.3d at 467 (quotation and internal punctuation omitted).

[48] (Am. Compl. ¶ 52.) Plaintiff alleges that this number is arbitrary in that it "does not take into consideration the application of payments under the Note as required by the Deed of Trust." (*Id.*)

[49] (*Id.* ¶ 53.)

[50] (*Id.* ¶ 54.)

amount of principal remaining on the loan.[51] Additionally, Defendant avers that Plaintiff did not plead intent to defraud or deceive, and she does not show that the pay-off statement was false.[52] Moreover, Defendant states that the damages pleaded by Plaintiff were too speculative, and that she did not plead any actual damages.[53] Defendant makes much of the HUD-1 settlement statement signed by Plaintiff, alleging that the HUD-1 statement contained the full amount owed to Defendant and that Plaintiff did not object to the contents of the HUD-1 statement.[54] Therefore, Defendant states that Plaintiff had full knowledge of all of the circumstances surrounding the HUD-1 statement and that she cannot now claim that Defendant misrepresented during the Refinancing.[55]

In response, Plaintiff avers that she did plead intent: "Plaintiff's Amended Complaint states, '[Defendant] knowingly presented an inaccurate and inflated pay-off statement.'"[56] Plaintiff also argues that she stated actual damages, in that she alleged that she paid $32,973.31 more than the principal owed on her mortgage.[57]

The Court finds that Plaintiff has not sufficiently pled fraud. First, she did not meet the requirements of Rule 9(b). Plaintiff did not articulate "the fraudulent scheme" surrounding the

---

[51] (Def.'s Mot. to Dismiss, D.E. # 17, at 9.)

[52] (*Id.*)

[53] (*Id.* at 10.)

[54] (*Id.*)

[55] (*Id.*)

[56] (Pl.'s Resp., D.E. # 20-1, at 9.)

[57] (*Id.*) Plaintiff also argues that Defendant's Motion should be denied because "there remain disputes of material fact pertaining to fraud." (*Id.* at 10.) However,

15

presentation of the pay-off statement. While she did allege the presentation of the allegedly fraudulent pay-off statement, she did not articulate how that presentation applied to a scheme to defraud Plaintiff of her funds. Thus, the Court finds that Plaintiff has failed to plead fraud with the particularity required by Rule 9(b).

Second, even if Plaintiff had pleaded Count 4 with the particularity required by Rule 9(b), Plaintiff would fail to state a claim under Rule 12(b)(6). Plaintiff presented scant facts beyond conclusory statements from which the Court could infer that Defendant knew the amount in the pay-off statement was false. Therefore, her Amended Complaint fails to satisfy the plausibility requirements of *Twombly* and *Iqbal*. Additionally, Plaintiff failed to plead that Defendant intended to defraud her. Count 4 does not contain a reference to Defendant's intent; instead, Plaintiff states that Defendant "committed fraud when it knowingly presented an erroneous pay-off statement to [Plaintiff] at her mortgage closing with [Chase]."[58] A knowing action is not necessarily equivalent to an intentional action, and Plaintiff makes no mention of Defendant's fraudulent intent in her Amended Complaint. Accordingly, Defendant's Motion to Dismiss Count 4 of the Amended Complaint is **GRANTED**.

## Breach of Contract

The essential elements of a breach of contract claim include: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages

---

[58] (Am. Compl. ¶ 55.)

caused by the breach of the contract."[59] Plaintiff attached the Deed of Trust to her Amended Complaint, and Paragraph 3 of the Deed of Trust provides as follows:

> 3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.[60]

Paragraph 1 concerns the payment of principal and interest and provides that "Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment, late charges, and other charges due under the Note."[61] Paragraph 2 addresses funds for taxes and insurance and provides in relevant part that

> Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments . . . which may attain priority over this Deed of Trust, and ground rents on the property . . . plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any. . . . If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency. . . . Lender shall apply the [F]unds to pay said taxes, assessments, insurance premiums, and ground rents.[62]

In her Amended Complaint, Plaintiff stated that the Deed of Trust required Defendant to allocate her mortgage payments as described in Paragraph 3.[63] Plaintiff alleges that Defendant breached this duty when it did not apply her payments in the proper order, did not pay property

---

[59] *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

[60] (Am. Compl., D.E. # 15, at 2.)

[61] (*Id.* at 1.)

[62] (*Id.*)

[63] (Am. Compl. ¶ 57.)

17

taxes in a timely manner, and advanced the payment of property taxes with money from its own coffers rather than paying the property taxes with the Funds.[64] As damages, Plaintiff asserts that she paid $56,788.71 in penalties, interest, and fees due to Defendant's alleged breach.[65]

Defendant implies that Plaintiff's breach of contract claim cannot satisfy the plausibility requirements of *Twombly* and *Iqbal* and states that she has not presented direct or inferential allegations sufficient to demonstrate a breach of contract.[66] Moreover, Defendant states that "Plaintiff has failed to show how payments were to be applied when she missed a payment, did not make a full payment, or made payments from an account with insufficient funds."[67]

In response, Plaintiff argues that the Deed of Trust does not address how Defendant, the servicer of the mortgage, was to collect its incidental fees, which indicates that the parties to the Deed of Trust did not intend for the servicer to deviate the application of the mortgage payments as delineated in the Deed of Trust.[68] Plaintiff avers that Defendant paid its own servicer's fees with her mortgage payments before applying those payments to the property taxes, interest, or loan principal.[69] Additionally, Plaintiff presents her damages calculation as follows: "$12,491.40 from inappropriately applied bankruptcy payments, $11,324.00 from inappropriately applied escrow payments, and $32,973.31 from the fraudulent pay-off

---

[64] (*Id.* ¶ 58.)

[65] (*Id.* ¶ 59.)

[66] (Def.'s Mot. to Dismiss, D.E. # 17, at 8.)

[67] (*Id.* at 9.)

[68] (Pl.'s Resp., D.E. # 20-1, at 8.)

[69] (*Id.*) However, the Court notes that this fact does not appear in Plaintiff's Amended Complaint.

18

statement," which total $56,788.71.[70]  She alleges that $56,788.71 is her total amount of actual damages from the breach of contract.

The Court finds that Count 5 of Plaintiff's Amended Complaint survives Defendant's Motion to Dismiss.  Plaintiff has adequately alleged the elements of a breach of contract claim under Tennessee law.  First, she attached the Deed of Trust—the contract enforceable between Plaintiff and Defendant—to her Amended Complaint, and its contents are properly before the Court.  Second, she stated a specific breach of the Deed of Trust by alleging that Defendant did not apply her payments as required by Paragraph 3 of the Deed of Trust.  Third, she alleged damages arising from the alleged misapplication of her payments.  Therefore, Defendant's Motion to Dismiss Count 5 of the Amended Complaint is **DENIED**.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

                                            **s/ S. Thomas Anderson**
                                            S. THOMAS ANDERSON
                                            UNITED STATES DISTRICT JUDGE

                                            Date: January 20, 2012.

---

[70]    (*Id.*)